## In re Upper Merion Township Policeman

*Muscoe M. Gibson*, for petitioners.

KNIGHT, J., October 2, 1931.—The Act of April 5, 1917, P. L. 47, provides that upon petition of not less than twenty-five taxpayers of any township of the second class, representing that the safety of the citizens, and the security of property, makes it necessary for the appointment of one or more policemen, the court shall authorize the supervisors of said township to appoint such policemen, and shall fix the number to be employed, and the maximum compensation of each policemen. Section six provides that the policemen shall be paid from the funds of the township.

The above petition was presented under the provisions of this act. It is signed by forty-nine taxpayers, and joined in by the supervisors; it is in proper form, and all jurisdictional requirements have been complied with. The necessity for a policeman in Upper Merion Township is conceded, and the sole question raised by counsel for the supervisors, who presented the petition, is whether the supervisors have power under the Township Act to use the money of the township to pay the compensation of the policeman.

The Act of May 9, 1889, P. L. 156, provides for the appointment of deputy constables in townships upon the petition of no less than twenty-five taxpayers.

Section three of this act provides, inter alia, that said deputy constable shall be paid such compensation as may be approved by the court of quarter sessions.

The Act of 1889, supra, has been twice before the lower courts of the Commonwealth for construction. In 1899, the Court of Common Pleas of Potter County, Olmsted, P. J., held in Adams v. Sweden Township, 9 Dist. R. 450, that a township was not liable for the services of deputy constables appointed under the act, because the statute was unconstitutional by reason of its defective title; and, further, if it were constitutional, the township was not made expressly liable by the act itself.

In 1904, the Quarter Sessions of Delaware County, Johnson, P. J., held in Com. ex rel. Saunders v. Upper Providence Township, 13 Dist. R. 736, that as the Act of 1889, supra, did not state by whom the compensation of the deputy constables was to be paid, the township was not liable for their compensation, and the court had no power to compel the supervisors to employ a policeman, nor to order these officials to pay one from the township funds.

The Act of 1917, supra, is practically a restatement of the Act of 1889, supra, except that it applies only to townships, of the second class; it calls the deputy constables, policemen; and it authorizes the supervisors of said townships to employ said policemen, and, when employed, to pay them from the township funds.

In the publication issued by the Legislative Reference Bureau of Pennsylvania, in 1922, on the township law, it is said on page sixty-one: "The provision that the compensation of the deputy constable shall be paid out of township funds has been inserted in view of the holding in Adams v. Sweden Township, 9 Dist. R. 450, and Com. ex rel. Saunders v. Upper Providence Township, 13 Dist. R. 736."

From the history of the legislation, and the clear construction of the Act of 1917, supra, it is plainly the legislative intent to authorize supervisors in townships of the second class to employ policemen under certain conditions, and to pay them from the township funds. But from what funds? Township supervisors have limited authority, their powers and duties are sharply defined by law. The General Township Act of July 14, 1917, P. L. 840, Sec. 386, enumerates the corporate powers of townships of the second class, and no specific authority is given the supervisors in this section to employ policemen. However, the provisions of the Act of April 5, 1917, P. L. 47, must be read into the foregoing section of the Township Act, and by this latter act supervisors are specially empowered to employ policemen under certain conditions, which in this case have been complied with.

Section 420 of the Township Act provides that the supervisors, in order to determine how much road tax to levy, shall make an estimate of the amount required in the ensuing year for the construction, maintenance and repair of the roads, culverts and bridges, and the purchase, hire and repair of implements and machinery and (d) "the amount of money necessary for the payment of debts, or other miscellaneous purposes." Paragraph (d) contemplates that the road tax shall include other items than those enumerated in paragraphs "a," "b" and "c" of the section, which apply to the construction, maintenance and repair of the highways, culverts and bridges, and the purchase, hire and repair of machinery.

Turning again to the enumerated powers of townships of the second class, in section 386 we find that they are authorized: (5) To erect watering-troughs; (6) to appropriate moneys for the expenses of Memorial Day services; (7) to appropriate money for the purpose of assisting the armory board of the Commonwealth and to furnish, free of cost, water, light or fuel for use in any

armory. The erection of watering-troughs has direct relation to the highways, but the latter two powers have no relation to roads whatever.

Since the Township Act does not authorize the supervisors to levy a specific tax for these three designated purposes, a fair construction of the act would imply that the money necessary to carry out these specifically conferred powers should come from the road tax fund. So, likewise, the money necessary to exercise the specifically conferred power of employing a policeman may be taken from the road fund in the absence of any direct authority to levy a tax for that purpose.

Nor can we say that the employment of a policeman has no relation to the public highways of the township. The multitude of automobiles and laws regulating their operation make the services of a policeman as necessary for the comfort, convenience and safety of the users of the highways as the guide posts, warning, speed and stop-signs, which supervisors are authorized by law to erect, and which they have erected and paid for without question, from the funds of the township. It is no valid objection that the powers of the policemen authorized under the act are not confined to violations of the traffic laws or offenses committed on the highways; to so limit their authority would be most confusing and would interfere materially with the proper performance of their duty. It is not to be assumed that the legislature did a vain and useless thing in vesting the supervisors with certain powers for the public good, and at the same time depriving them of the right to exercise these powers by failing to authorize them to levy the necessary taxes. Rather, it is to be presumed that the legislature intended the road tax fund to be in the nature of a general fund, to the extent at least of permitting the supervisors to exercise those powers specifically conferred upon them by law.

And now, October 2, 1931, upon consideration of the foregoing petition, the supervisors of the township are authorized to appoint a qualified elector to act as policeman in said township; said policeman to serve at the will of the supervisors. The maximum compensation of the policeman so appointed is fixed at $200 per month. The term of service of said policeman is limited to two years.

From Aaron S. Swartz, Jr., Norristown, Pa.